IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

ARTHUR DAVIS, III,

    Plaintiff,

v.                                          CIVIL ACTION NO.: 5:24-cv-00684
                                              JUDGE: Frank W. Volk

SHELBY GROUP INTERNATIONAL, INC.
d/b/a MCR SAFETY, and
UNITED CENTRAL INDUSTRIAL SUPPLY
COMPANY, L.L.C,

    Defendants.

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF MARC ZUPAN, PH.D., OR IN THE ALTERNATIVE, LIMIT HIS TESTIMONY AND STRIKE ALL SUPPLEMENTAL EVIDENCE DISCLOSED AFTER THE EXPERT DISCLOSURE DEADLINE**

Defendant agrees in its *Response* that Dr. Zupan did not perform any testing to support his opinion that a rotating drill steel did not cause the damage found on the subject Dyneema sleeve. (ECF No. 88). Likewise, the Defendant does not contest in its *Response* that Dr. Zupan also failed to conduct any testing to support his opinion that the damage to the sleeve was created by "routine wear and exposure." Rather, the Defendant argues that Dr. Zupan's methodology of physically observing the Dyneema sleeve through a microscope is reliable methodology based on the holdings in three cases which predate the Fourth Circuit's decision in *Nease v. Ford Motor Co*., 848 F.3d 219, 231 (4th Cir. 2017) (hold that physical observation through a borescope without testing is unreliable methodology under a *Daubert* analysis). *See Tyree v. Boston Sci. Corp*., 54 F. Supp. 3d 501 (S.D. W. Va. 2014), *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691 (S.D. W. Va. 2014), and *Sanchez v. Boston Sci. Corp*., No. 2:12-cv-5762, 2014 U.S. Dist. LEXIS 137189 (S.D. W. Va. Sept. 29, 2014). For the reasons set forth herein, this Court should follow the Fourth Circuit's

holding in *Nease* and *Belville* and exclude Dr. Zupan's opinions.

**A. The *Tyree* Case Cited by the Defendant Excluded Plaintiff's Polymer and Causation Experts for Unreliable Methodology**

In 2014, in the case of *Tyree v. Boston Sci. Corp.*, the Plaintiff retained Dr. Trepeta, a pathologist, to opine about mesh degradation of a transvaginal surgical mesh product, *not the cause of Plaintiff's injuries*, as Dr. Zupan has testified to in the instant matter. 54 F. Supp. 3d 501. Dr. Trepeta was simply retained to verify the presence of degradation and shrinkage of a mesh product, which could be assessed from a microscope, not to opine as to what *caused* the degradation and shrinkage. In rendering his opinions, in addition to viewing mesh under a microscope, Dr. Trepeta studied over fifty mesh explant samples in his private practice, studied medical literature specific to mesh implantation and erosion, and reviewed twenty-four pathology reports. The actual causation experts in the *Tyree* case were Dr. Mays, and Dr. Gido, who were polymer materials experts, just like Dr. Zupan. Dr. Mays and Dr. Gido performed a microscopic analysis, *along with various other* tests, yet the Court found that because the testing was unreliable, Dr. Gido's opinions were excluded, and Dr. Mays was only permitted to testify generally about polypropylene degradation, and not specific causation opinions. *Tyree*, 54 F. Supp. 3d at 538. Lastly, the Court also excluded Plaintiff's causation expert, Dr. Iakovlev, because his "testing methodology was flawed," and therefore unreliable under *Daubert*. Accordingly, the *Tyree* case is further proof that absent reliable testing, a causation expert in a product case who simply relies on physical observation has not applied reliable methodology and should be excluded.[1]

---

[1] The *Sanchez* case cited by the Defendant issued the same ruling as the *Tyree* case, holding that because the testing was unreliable, Dr. Gido's opinions were excluded, and Dr. Mays was only permitted to testify generally about polypropylene degradation, and not specific causation opinions. *Sanchez v. Boston Sci. Corp.,* No. 2:12-cv-5762, 2014 U.S. Dist. LEXIS 137189 (S.D. W. Va. Sept. 29, 2014).

**B. The *Huskey* Case Cited by the Defendant Excluded Plaintiff's Causation Expert for his Failure to Test and His Lack of Explanation as to Alternative Causes of Injury**

In 2014, in the case of *Huskey*, *v. Ethicon, Inc.*, this Court excluded Plaintiff's causation expert for his failure to properly test and simply rely on physical observation of the mesh product. 29 F. Supp. 3d 691. In that case, Defendant sought to exclude Plaintiff's causation expert, Dr. Rosenzweig's opinions regarding degradation, fraying, and particle loss. Dr. Rosenzweig formed his opinion by examining the Plaintiff and relying on his experience and medical knowledge but never tested a mesh product. This Court excluded Dr. Rosenzweig, holding as follows:

> "Dr. Rosenzweig has not seen or tested Ms. Huskey's mesh, he does not explain how tenderness indicates that Ms. Huskey's mesh has degraded. Nor does he attempt to rule out the other potential causes for tenderness that he identified, even though he admits there could be "numerous" others. (Rosenzweig Dep. [Docket 149-2], at 282:7); *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 202 (4th Cir. 2001) ("[I]f an expert utterly fails to consider alternative causes or fails to offer an explanation for why the proffered alternative cause was not the sole cause, a district court is justified in excluding the expert's testimony."). *Huskey v. Ethicon*, Inc., 29 F. Supp. 3d 691, 708.

Accordingly, the *Huskey* case cited by the Defendant supports Plaintiff's Motion and is consistent with the Fourth Circuit's recent decision in *Nease*. Mere physical observation from a causation expert without the support of testing and without an explanation for why alternative causes were the sole cause of injury, is unreliable methodology that should be excluded. Here, like in *Huskey,* Dr. Zupan, after performing no testing on a Dyneema sleeve around rotational equipment, has opined that not only could a rotating drill steel not cause that sort of damage found on the Dyneema, but that the damage was created elsewhere by "routine wear and exposure." Dr. Zupan, however, when asked what sort of routine wear and exposure caused the abrasions, testified that he has no specific opinion as to what caused the damage on the Dyeema sleeve. (ECF No. 86 at Exhibit B, at 90: 2 – 10). For this reason alone, Dr. Zupan's opinions should be excluded

because he is forced to speculate as to what caused the Dyneema sleeve's damage. Such speculation is contrary to purpose of Rule 702 and the reliability factors outlined in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993).

**C. In 2017, The Fourth Circuit in *Nease v. Ford Motor Company* Provided Guidance By Holding that Physical Observation Unsupported by Testing is not Reliable Methodology in a Product Case**

In 2017, in the case of *Nease v. Ford Motor Co.*, the plaintiff disclosed expert Samuel Sero's to support his claim that a defect in a vehicle's throttle assembly caused unintended acceleration, and thus, his crash. Mr. Sero used a borescope to inspect the vehicle's throttle assembly and concluded that a cable in the assembly was defectively designed because it permitted grease and grime to enter the assembly and was "known to cause sticking or binding of the cable." Defendant Ford's *Daubert* challenge of Mr. Sero was overruled by the district court, and the case proceeded to trial where Sero admitted he never conducted any testing to determine if enough dirt and grease had actually accumulated, but instead "relied upon his observations during the borescope exam."

On appeal, the Fourth Circuit determined that Sero's opinions were fundamentally unreliable under *Daubert*, and that he should not have been permitted to testify. First, the court noted that a borescope is "simply a viewing tool" that permits the expert to view components otherwise inaccessible, and that use of the borescope could not determine the amount of contaminant within the allegedly defective component. *Nease,* 848 F.3d at 222. Second, the court found that Sero "conducted no testing whatsoever to arrive at his opinion." The expert never "ran any tests to confirm his theory;" never tested the subject vehicle—or an exemplar vehicle—to determine whether the theory was "actually possible;" and he never "demonstrated" his theory on the subject or exemplar products. *Id.* at 222-226. While Mr. Sero claimed he never tested his

4

theory because "testing of the alternative designs he identified was unnecessary because the designs had been in use in other vehicles for years and were therefore "proven commodit[ies]," the Fourth Circuit disagreed. *Id.* at 227. Ultimately, Mr. Sero's "failure to test his hypothesis render[ed] his opinions […] unreliable." In other words, the expert "presented a hypothesis only— he failed to validate it with testing." *Id.* Mr. Sero's untested hypothesis, however plausible, failed to meet *Daubert's* reliability standards and was therefore excluded." *Id.*

Here, Dr. Zupan's hypothesis that the subject sleeve's condition was caused by "routine wear and exposure" is just that—an untested hypothesis that he was "failed to validate […] with testing." The entirety of Dr. Zupan's testing is his "visual inspection" of the physical evidence under a microscope. Just like the borescope in *Nease*, a microscope is simply a "viewing tool" permitting a visual inspection of a material. Plaintiff concedes that a microscope is one means of collecting information about a material; however, mere analysis under a microscope does not reveal any data or information about the types of forces impacting a material at a given time. Dr. Zupan admits that the subject sleeve's fabric displays evidence of "routine wear and exposure" but cannot tell the jury was those forces were. Dr. Zupan has conducted no testing to arrive at his opinion regarding the forces affecting the subject Dyneema sleeve. Like Mr. Sero in *Nease*, Dr. Zupan has not conducted any analysis of what forces could have caused the undisputed conditions of damage upon the sleeve. Instead, Dr. Zupan assumed the sleeve received its tear and abrasions some time before the subject incident despite Plaintiff's testimony that he had received the sleeve earlier that same day.

In short, Dr. Zupan performed no scientific testing which would reliably establish his opinion that the Dyneema sleeve was damaged through "routine wear and exposure," such as defining "routine wear and exposure", analyzing the forces subjected onto Dyneema fabric during

the undefined "routine wear and exposure", or determining how much force would be required to abrade and/or tear the Dyneema fabric. Dr. Zupan's failure to pursue any testing of the forces known to be at play on Dyneema fabric cannot surmount the "reliable application of scientific methodology" necessary to satisfy Fed. R. Evid. R. 702. Just as Mr. Sero did in *Nease*, Dr. Zupan has "presented a hypothesis only," has "failed to validate [the hypothesis] with testing," and his unreliable opinions should be excluded.

**D. In 2019, The Fourth Circuit Upheld its *Nease* Decision in *Belville v. Ford Motor Co.***

In 2019, in the case of *Belville v. Ford Motor Co.*, 919 F.3d 224, 227 (4th Cir. 2019), the Fourth Circuit, applying its analysis established in *Nease*, upheld this Court's ruling to exclude Plaintiff's experts for their failure to test their theories with respect to the cause of unintended acceleration, such that their methodology was deemed unreliable under Rule 702. The Court, applying *Daubert* factors, found that the most important factor in a product case is testing, and the Plaintiff's experts failed to reliably test the product, holding as follows:

> the district court correctly observed that none of the experts tested any of the Plaintiffs' vehicles or any of the thousands of Ford vehicles in their purported class which they allege had a UIA. Of the multitude of vehicles the Plaintiffs claim to be defective, the record does not reflect they attempted to test even one vehicle purported to have had a UIA, much less conduct such a test under real-world conditions. Most importantly, none of the proffered expert opinions purport to tie their testing to any alleged UIA so as to show the fundamental element of causation. To the contrary, the Plaintiffs' experts disclaimed any finding or opinion as to the causation of any specific UIA.

*Id.* at 234. The Fourth Circuit upheld this Court's ruling, further holding that "the [district court's] well-articulated analysis clearly distinguishes this case from *Nease* in which the district court failed to act as a gatekeeper by not assessing the expert's reliability but leaving that question to the jury. *Id.* at 231. Instead, the court here faithfully performed its duty as a "gatekeeper" in the manner we approved in *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability*

6

*Litigation* (No II) MDL 2502, 892 F.3d 624, 631 (4th Cir. 2018).

Here, like in *Belville*, Dr. Zupan has failed to perform testing of an exemplar sleeve to determine if rotating drill steel could cause the damage found on the sleeve. He failed to test the sleeve under real world conditions as the Plaintiff's experts have. Lastly, he fails to rely upon any literature which tests Dyneema around rotational equipment such as a drill steel. Indeed, the articles referenced by Dr. Zupan either involved ballistic testing where a bullet was shot at Dyneema material at velocities which differ from than the RPM of the rotating drill steel in this case, or involved an analysis of wear an exposure of a Dyneema rope located on a boat in the Netherlands which sustained UV damage over fifteen years. Insofar as Mr. Davis was not shot with a bullet, nor did he wear a Dyneema sleeve on a boat for fifteen years and exposed to UV radiation, Dr. Zupan's reliance on articles which in no way address damage to Dyneema when contacted with rotating drill steel at 600 RPM, in the absence of testing, is unreliable and should be excluded. Accordingly, for the reasons set forth herein and in Plaintiff's Motion, the Court should exclude Dr. Zupan's opinions.

**E. Dr. Zupan's Supplemental Evidence Relating to Testing of an Exemplar Glove Was an Untimely Disclosure and Should Be Excluded**

Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure states that "a party must make these [expert] disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the ***disclosures must be made: (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)( B) or (C), within 30 days after another party's disclosure***. (emphasis added)

On July 22, 2025, ***thirty-six days*** after Plaintiff filed his Rebuttal Expert Witness Disclosure, and after the discovery deadline passed, the Defendants supplemented Dr. Zupan's file with videos and pictures of an exemplar glove that Dr. Zupan performed testing on wherein he

caused a glove to wrap around a rotating drill steel to apparently support his opinion that entanglement of a glove can occur around rotational equipment. Dr. Zupan did not produce this information until July 22, 2025, did not consider this information in making his opinions set forth in his report, and Plaintiff's rebuttal experts were accordingly unable to consider or rebut the specifics of information within their reports. Essentially, Dr. Zupan is attempting to serve as a sur-rebuttal expert but failed to produce such evidence within the thirty days permitted under Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure.

Because this test was produced in an untimely manner contrary to Rule 26(a)(2(D)(ii), it is an improper supplementation and should be not be permitted to be shown at trial.

## CONCLUSION

For the reasons set forth herein, the Plaintiff respectfully requests that this Court exclude the opinions of Marc Zupan, Ph.D, or in the alternative, limit his testimony and strike all supplemental evidence disclosed after the expert disclosure deadline.

**ARTHUR DAVIS, III**
**By Counsel**

/s/ Taylor M. Norman
D. Blake Carter, Jr. (WV State Bar No. 9970)
Taylor M. Norman (WV State Bar No. 13026)
BAILEY JAVINS & CARTER, LC
213 Hale St.
Charleston, WV 25301
304-345-0346 (phone)
304-720-9167 (fax)
jrcarter@bjc4u.com
tnorman@bjc4u.com
*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**ARTHUR DAVIS, III,**

    Plaintiff,

v.                                      **CIVIL ACTION NO.: 5:24-cv-00684**
                                            **JUDGE: Frank W. Volk**

**SHELBY GROUP INTERNATIONAL, INC.**
**d/b/a MCR SAFETY, and**
**UNITED CENTRAL INDUSTRIAL SUPPLY**
**COMPANY, L.L.C,**

    Defendants.

## CERTIFICATE OF SERVICE

The undersigned counsel for plaintiff, does herby certify that on this 25th day of August, 2025, a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO EXCLUDE THE OPINIONS OF MARC ZUPAN, PH.D., OR IN THE ALTERNATIVE, LIMIT HIS TESTIMONY AND STRIKE ALL SUPPLEMENTAL EVIDENCE DISCLOSED AFTER THE EXPERT DISCLOSURE DEADLINE,** was sent to the below CM/ECF participants. This document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                                      /s/ Taylor M. Norman
                                                    Taylor M. Norman (WV State Bar No. 13026)